UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD MALOTT,

          Plaintiff,

    v.

PLACER COUNTY, et al.,

          Defendant.

No.  2:14-CV-1040 KJM EFB

ORDER

Defendants Nevada County, DeVogelaere[1], Nelson, Royal and Salivar (Nevada County defendants) and defendants Sacramento County, Jones, Bustamante, Hendricks and Epperson (Sacramento County defendants) have filed motions to dismiss.  ECF Nos. 22, 27.  The court ordered the motions submitted without a hearing and now GRANTS both motions in part and DENIES them in part.

I.  ALLEGATIONS OF THE COMPLAINT

On or about April 25, 2013, Sacramento County Sheriff's Deputies Bustamante and Epperson stopped plaintiff for rolling through a stop sign, found a gun on plaintiff's person,

/////

---

[1] In his opposition, plaintiff spells this deputy's name DeVogelaire, which is the spelling used in the caption of the complaint. *See, e.g.,* ECF No. 31 at 19; ECF No. 2 at 1.  In the body of the complaint, plaintiff spells the name "DeVogelaere."  *See, e.g.,* ECF No. 2 ¶ 21.

arrested plaintiff for carrying a concealed weapon without a permit, searched plaintiff's Jeep and seized plaintiff's diary, among other things.  Compl., ECF No. 1 ¶¶ 32-45.

During the search of the Jeep, plaintiff, handcuffed in the back of Bustamante's and Epperson's patrol car, began to experience "extreme physical distress."  He told the officers he believed he was suffering from heat stroke.  *Id.* ¶¶ 46, 48.  The officers refused to call for medical assistance, believing plaintiff was faking his symptoms.  *Id.* ¶ 49.  As plaintiff was leaning against the patrol car door, Bustamante opened the door, causing plaintiff's head to fall out; Bustamante closed the door on plaintiff's head and then shoved it back into the car.  *Id.* ¶ 50.

Bustamante told Epperson plaintiff was "playing them" and so, as plaintiff's head was leaning against the back of the passenger seat, Bustamante used a small hard object to push twice on plaintiff's sternum, looking for plaintiff's reaction.  *Id.* ¶¶ 51-53.  These "sternum rubs" were painful and caused bruising.  *Id.* ¶ 54.

Defendant Jones, the Sheriff, was aware of Bustamante's propensity to use unreasonable force, as the County had just settled a lawsuit stemming from Bustamante's killing an unarmed man.  *Id.* ¶ 56.  Sacramento County declines to track the number of reported instances of force by officer and fails to undertake the proper training and discipline of officers whose conduct suggested they are at high risk of using force.  *Id.* ¶ 58.

On April 29, 2013, plaintiff initiated a citizen's complaint in Sacramento County concerning Bustamante's and Epperson's behavior.  *Id.* ¶ 122.  Although Sheriff's personnel asked for plaintiff's medical records, plaintiff was unable to get in contact with the officer who had requested the information.  *Id.* ¶¶ 122-125.  In a letter dated October 10, 2013, defendant Jones rejected plaintiff's citizen complaint despite the fact that plaintiff had been unable to deliver his medical records to the necessary people.  *Id.* ¶ 126.

Later Bustamante and Epperson gave plaintiff's diary to defendant Hendricks, a detective with the Sheriff's Department, who was part of a task force designed to target plaintiff. *Id.* ¶¶ 63, 67.[2]  Despite the fact the diary contained nothing threatening, Hendricks copied

---

[2]  As the Nevada County defendants have not moved to dismiss, the court does not include the complaint's description of their alleged actions unless necessary for a comprehensible narrative.

1   portions of it and showed these to plaintiff's former girlfriend C.C.[3] and to Julie Ferneyhough, a

2   friend who was living on the Malott property.  *Id.* ¶ 67.

3          As a result of Hendricks' encouragement, C.C. filed a request for a restraining

4   order in Placer County Superior Court.  *Id.* ¶ 80.  Plaintiff delivered a subpoena addressed to

5   defendant Royal, the Nevada County Sheriff, by handing it to defendant Donna Nelson, Royal's

6   administrative assistant; the subpoena directed Royal to appear in person on July 8, 2013 and to

7   produce records relating to plaintiff.  *Id.* ¶¶ 82-84.  Although Nelson refused to tell plaintiff what

8   fees he should provide, he provided a check covering the statutory fees the next day.  *Id.* ¶¶ 84-

9   86.

10          Royal failed to appear or to produce any documents in response to the subpoena,

11   after he and Nelson colluded in devising a claim the subpoena had not been served properly.  *Id.*

12   ¶¶ 87-88.  Plaintiff received a letter from Nelson dated July 16, returning the subpoena and the

13   fees on the ground that the subpoena was insufficiently served under § 414.10 of the California

14   Code of Civil Procedure.  *Id.* ¶¶ 90-92.  Nelson and Royal were aware, however, that plaintiff

15   gave the subpoena and fees to the Nevada County Sheriff's Department for service on Royal in

16   compliance with § 26608 of the Government Code and § 262.1 of the Code of Civil Procedure.

17   *Id.* ¶ 93.

18          As a result of Royal's failure to appear and produce documents, plaintiff was

19   unable to present his defense and the court issued a restraining order against him.  *Id.* ¶ 100.

20          Sometime later, Placer County Sheriff's Deputies entered plaintiff's property

21   without a warrant.  Even though plaintiff reported this to defendant DeVogelaere, a Nevada

22   County Sheriff's Deputy, DeVogelaere developed a pretextual reason for the Placer County

23   authorities' entry onto plaintiff's property.  *Id.* ¶¶ 109-110.  DeVogelaere and Royal were aware

24   of Placer County's numerous illegal entries onto plaintiff's property and assisted in a cover-up of

25   these actions.  *Id.* ¶¶ 117-118.

26

27   [3]  It is unclear why plaintiff refers to this woman by her initials only; she is identified by name in
     exhibits A and B.  Should plaintiff wish to refer to her by initials in any amended complaint, he

28   should seek leave of court to do so.

On January 15, 2014, plaintiff initiated a citizen's complaint against defendants Nelson, Royal and DeVogelaere; it was rejected as unsubstantiated.  *Id*. ¶¶ 127-128.

The complaint contains twenty claims.  In their motion, the Sacramento County defendants do not seek to dismiss all the claims, and in his opposition to the Sacramento County defendants' motion to dismiss, plaintiff withdrew claims four, seven and eight.  In addition, the Placer County defendants have not filed a motion to dismiss, so the claims against them are not identified here.  The claims at issue in these motions are: (1) unreasonable force under the Fourth Amendment against Bustamante and Epperson; (2) unreasonable force under the California Constitution and the Bane Act against Bustamante and Epperson; (5) failure to supervise against Nevada and Sacramento Counties and Royal and Jones; (6) unreasonable search and seizure under the Fourth Amendment against Bustamante, Epperson, and Hendricks; (9) interference with the right of access to the courts in violation of the First Amendment against Nelson and Royal; (10) denial of equal protection against Nelson and Royal; (11) a violation of procedural due process under the Fourteenth Amendment against Nelson and Royal; (18) conspiracy to violate plaintiff's Fourth Amendment rights regarding the search of his property against DeVogelaere, Royal and a Placer County defendant; (19) conspiracy to violate plaintiff's right of access to the courts, equal protection and due process against defendants Nelson and Royal; and (20) ratification of constitutional violations against defendants Nevada County, Salavar, Sacramento County,  and Jones.

II.  STANDARDS FOR A MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

4

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.   *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III.  SACRAMENTO COUNTY'S MOTION TO DISMISS

A. Claim One, Excessive Force, Against Epperson

Defendants argue the complaint does not show Epperson's involvement in Bustamante's alleged applications of force by closing plaintiff's head in the car door and applying two brief sternum rubs.  Mot. to Dismiss, ECF No. 22-1 at 9-10.  They argue Epperson cannot be deemed to have failed to intervene because there was no opportunity for him to have done so.  *Id.*

5

1    Plaintiff argues Bustamante's statement that plaintiff was "playing them" alerted

2 Epperson to the uses of force and the two sternum rubs lasted for 10 to 25 seconds each, long

3 enough for Epperson to intervene.  Opp'n, ECF No. 32 at 9-10.

4    In reply defendants say the complaint says only that Epperson was present, but

5 does not say he witnessed the two sternum rubs.  They also say the complaint does not show there

6 was any opportunity to intercede before Bustamante shut the door on Malott's head.  Reply, ECF

7 No. 33 at 2-3.

8    A claim under 42 U.S.C. § 1983 has two elements: (1) a violation of a federal

9 constitutional or statutory right, (2) committed by a person acting under state law.  *Long v. Cnty.*

10 *of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  In addition, the person acting under color of

11 state law must have personally participated in the acts giving rise to the claim or "set in motion a

12 series of acts by others which the actor knows or reasonably should know would cause others to

13 inflict the constitutional injury*." Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *Taylor v.*

14 *List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A defendant is a personal participant in an alleged

15 deprivation of rights "'if he does an affirmative act, participates in another's affirmative acts, or

16 omits to perform an act which he is legally required to do that *causes* the deprivation . . . .'"  *Leer*

17 *v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson*, 588 F.2d at 743) (emphasis in

18 original); *see also Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (stating there is no group

19 liability for constitutional violations).

20    Even when a defendant does not inflict the constitutional injury himself, he may be

21 liable if he failed to intervene to prevent others' actions:  "'police officers have a duty to intercede

22 when their fellow officers violate the constitutional rights of a suspect or other citizen.'"

23 *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *Koon v. United States*, 34

24 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996).  However,

25 officers may be liable under a failure-to-intercede theory only when they have the opportunity to

26 do so.  *Id.*  As one district court has said, to proceed on a failure to intervene claim, "plaintiff

27 must show that the defendant-bystanders had enough time to observe what was happening and to

28 /////

6

1   intervene to stop it." *Harrison v. Hedgpeth*, No. C-12-0963 YGR (PR), 2014 WL 46701, at *8

2   (N.D. Cal. Jan. 6, 2014).

3            The complaint here does not adequately plead Epperson's failure to prevent

4   Bustamante's use of force:  there is no suggestion Epperson was near the patrol car when

5   Bustamante acted or was otherwise aware of his partner's activities.  That Bustamante expressed

6   his belief plaintiff was faking his claims of ill health cannot be morphed into Epperson's

7   awareness Bustamante would use force in an attempt to call plaintiff's bluff.  Plaintiff will be

8   given leave to amend this claim if he is able to do so consonant with Rule 11.

9            B.  Claim Two, Bane Act, Against Epperson

10           Defendants argue Epperson cannot have violated California's Bane Act, Civil

11   Code §52.1, by failing to act.  ECF No. 22-1 at 11.  Plaintiff counters that because the elements of

12   an excessive force claim are the same as a Bane Act claim, Epperson is similarly liable under the

13   Bane Act.  ECF No. 32 at 12-13.

14           California's Bane Act, Civil Code § 52. 1, provides that a person "whose exercise

15   or enjoyment" of constitutional rights has been interfered with "by threats, intimidation, or

16   coercion" may bring a civil action for damages and injunctive relief.  The essence of such a claim

17   is that "the defendant, by the specified improper means . . . tried to or did prevent the plaintiff

18   from doing something he or she had the right to do under the law or force the plaintiff to do

19   something he or she was not required to do." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.

20   App. 4th 860, 883 (2007).  "The word 'interferes' as used in the Bane Act means 'violates.'"  *Id.*

21   at 883.  Accordingly, a Bane Act claim requires "an attempted or completed act of interference

22   with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329,

23   334 (1998).

24           As plaintiff points out, "'the elements of the excessive force claim under § 52.1 are

25   the same as under § 1983.'"  *Chaudhry v. City of Los Angeles*, 751 F. 3d 1096, 1105 (9th Cir.)

26   (quoting *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)), *cert. denied* 135 S.Ct. 295

27   (2014).  He thus reasons that Epperson's failure to intervene, which renders him liable for the

28   excessive force, violates the Bane Act.  He relies on *Knapps v. City of Oakland*, 647 F. Supp. 2d

1129, 1168 (N.D. Cal. 2013), which he characterizes as recognizing a Bane Act claim may be based on a failure to intervene.  ECF No. 32 at 13.  In *Knapps*, the district court found one officer used excessive force against the plaintiff, while the other two were liable because they failed to prevent their colleagues' use of force.  *Id*. at 1159.  The court then considered plaintiff's Bane Act claims, recognized that the elements of the claim are "essentially identical" to a § 1983 action for excessive force, and said "where a plaintiff's claims under the federal and state constitutions are co-extensive, the discussion of a plaintiff's federal constitutional claims resolves both the federal and state constitutional claims."  *Id*. at 1168.  The court did not examine the question whether one who is vicariously liable for the use of force because of his failure to intervene could be liable for a Bane Act violation, but rather just assumed it was so.

This court is not convinced by *Knapps* that the officers who failed to intervene are liable under the Bane Act.  It is true that the elements of the excessive force claim are coextensive with the Bane Act claim, but plaintiff does not allege Epperson used force, rather he failed to prevent the use of force.  He also does not allege Epperson used force, threats or intimidation; he says only that Epperson failed to act.

In *Jones,* the California Supreme Court considered whether store personnel who seized a suspected shoplifter could be liable for a Bane Act violation. 17 Cal. 4th. 329.  In the course of rejecting plaintiff's claim, the court said only government agents could interfere with Fourth Amendment rights.  It acknowledged that a private actor might nevertheless be vicariously liable for interfering with such rights even though he could not do so directly, but would still need to have used force, threats or intimidation.  *Id*. at 334; *see also Marconi v. Officer One*, No. C 05-1978 CW, 2006 WL 2827862, at *9 (N.D. Cal. Oct. 3, 2006) ("Although there is authority establishing liability for an individual who fails to intervene under § 1983, there is no authority for imposing liability . . . under the Bane or Ralph Acts for failure to intervene.").  Plaintiff has not alleged, nor does the court believe he can allege, that the failure to intervene was or could be accompanied by the "specified improper means (i.e., 'threats, intimidation or coercion')" necessary to a Bane Act violation.  *Austin B*., 149 Cal. App. 4th at 883.  This claim is dismissed without leave to amend.

1    C.   Fifth Claim, Failure to Supervise or Discipline, Against Jones and Sacramento County

2         1.   The County

3         "[A] local government may not be sued under § 1983 for an injury inflicted solely

4    by its employees or agents.  Instead, it is when execution of a government's policy or custom . . .

5    inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Dep't*

6    *of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "To establish municipal liability under *Monell*, a

7    plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was

8    deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

9    indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force

10   behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.

11   2011), *cert. denied*, ___U.S. ___, 133 S.Ct. 1725 (2013) (internal quotation marks omitted);

12    *see Knanishu v. McGinness*, 478 F. App'x 432, 433 (9th Cir. 2012) (affirming dismissal of

13   claims against County of Sacramento where plaintiff failed to "allege that his injuries were

14   proximately caused by defendants' conduct under an official county policy, custom, practice, or

15   procedure").

16        Defendants argue plaintiff has not identified a policy of inadequate supervision,

17   has described only a single instance of inadequate investigation, and says nothing about

18   inadequate discipline.  ECF No. 22-1 at 14-15.  They note that a single incident involving a

19   constitutional violation does not establish a policy sufficient to satisfy *Monell*. *Id*., citing *City of*

20   *Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).  Plaintiff counters that he has described the

21   County's policy of refusing and failing to track uses of force per officer and the results of that

22   policy.  ECF No. 32.

23        In the body of the complaint, plaintiff does identify the County's alleged failure to

24   track uses of excessive force, which in turn leads to a failure to supervise and discipline officers

25   at risk for using such force.  ECF No. 2 ¶ 58.  In the portion describing claim five, however,

26   plaintiff says only that his constitutional injuries flowed from the County's failure to supervise,

27   investigate and discipline officers' use of force.  *Id*. ¶¶ 150-151a.  Although the claimed policy of

28   failing to investigate might be tied to the alleged failure to keep track of officers' use of excessive

9

1  force, plaintiff has not identified any policies regarding supervision and training, explained how

2  they are deficient, or suggested how they led to his injuries.  *See Dean v. Sacramento County*, No.

3  2:13–cv–00730–JAM–KJN, 2014 WL 4377956, at *3 (E.D. Cal. Sept. 4, 2014) (stating a

4  complaint was deficient because it failed to "identify what the practices or policies were, how

5  they were deficient, or how they caused Plaintiffs' harm, allegations necessary to state a claim

6  against the County").   Plaintiff will be given leave to amend this claim, if he is able.

7              2. Sheriff Jones

8              Defendants argue plaintiff has not pleaded Jones' involvement in Bustamante's

9  actions or adequately pleaded Jones' failure to prevent Bustamante's actions.  ECF No. 22-1 at

10  15.  They also argue Jones is not responsible for any failings in the internal affairs investigation

11  and that plaintiff has not adequately pleaded any failure to discipline Bustamante.  *Id*. at 16.

12              Plaintiff contends Jones had actual knowledge of Bustamante's propensity to use

13  excessive force based on Bustamante's prior shooting of a civilian and, despite this knowledge,

14  failed to supervise, investigate and discipline Bustamante.  ECF No. 32 at 16-17.

15              "[S]upervisory officials are not liable for the actions of subordinates on any theory

16  of vicarious liability under 42 U.S.C. § 1983."  *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir.

17  2001).  But supervisors can be held liable in their individual capacity for: "1) their own culpable

18  action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in

19  the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a

20  reckless or callous indifference to the rights of others."  *Cunningham*,  229 F.3d at 1292; *see*

21  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  A supervisor may be liable "'for

22  his own culpable action *or inaction* in the training, supervision, or control of his subordinates . . .

23  .'"  *Starr v. Baca*, 652 F.3d 1202, 1208-09 (9th Cir. 2011) (emphasis in original) (quoting

24  *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)), *cert. denied*, 132 S.Ct. 2101

25  (2012).  However, "[t]he cases in which supervisors have been held liable under a failure to

26  train/supervise theory involve conscious choices made with full knowledge that a problem

27  existed."  *Wardell v. Nollette*, No. C05-0741RSL, 2006 WL 1075220, at *3 (W.D. Wash. Apr.

28  20, 2006) (collecting cases); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (to

1   impose liability for supervisor's failure to train, "a plaintiff must usually demonstrate a pattern of

2   violations and that the inadequacy of the training is obvious and obviously likely to result in a

3   constitutional violation") (citation, internal quotation marks omitted); *Doe v. City of San Diego*,

4   ___ F. Supp. 2d ___, 2014 WL 3893045, at *11 (Mar. 27, 2014) (plaintiff generally cannot

5   demonstrate supervisor's deliberate indifference by pointing to single incident).

6          Here, plaintiff alleges Jones was aware of Bustamante's propensity to use

7   excessive force because he knew Bustamante had shot and killed an unarmed citizen.  ECF No. 2

8   ¶ 56.  He also alleges upon information and belief that "Bustamante has reported uses of force at

9   such a level that would have put any reasonable supervisor on notice of his need for training,

10  supervision and discipline."  *Id*. ¶ 58.  This conclusory allegation does not save the claim, as

11  plaintiff does not attempt to suggest what sort of incidents could reasonably be expected to give

12  rise to "full knowledge that a problem existed."   Plaintiff will be given leave to amend this claim.

13         D.  Sixth Claim against Detective Hendricks

14         Defendants contend plaintiff has not pleaded a Fourth Amendment claim against

15  Hendricks because he alleges only that Hendricks read a diary already booked into evidence.

16  They also argue she is entitled to qualified immunity because Hendricks was entitled to rely on

17  information from Epperson and Bustamante that the diary was properly seized.  ECF No. 22-1 at

18  17-18.

19         Plaintiff argues that the diary was unlawfully seized and any subsequent search,

20  even at the station was similarly unlawful.  He also argues that questions of qualified immunity

21  require factual determinations not properly made in the context of a motion to dismiss.  ECF No.

22  32 at 17-19.

23         Defendants cite no law supporting their claim that Hendricks' later examination of

24  the diary was not a Fourth Amendment violation.  Indeed, a diary is "the very essence of the

25  'papers and effects' the Fourth Amendment was designed to protect."  *United States v. Christie*,

26  717 F.3d 1156, 1164 (10th Cir. 2013).  Defendants also have cited no law suggesting police have

27  free rein to examine personal effects once they are booked.   They thus have not borne their

28  burden of showing the complaint fails to state a Fourth Amendment claim against Hendricks.

1    That said, law enforcement officers are shielded from suit unless their conduct

2 violates "clearly established statutory or constitutional rights of which a reasonable person would

3 have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity test

4 comprises two inquiries, but a court may consider only the second in accordance with fairness

5 and efficiency and in light of the circumstances of a particular case.  *Pearson v. Callahan*, 555

6 U.S. 223, 236 (2009).  Under the first prong, the court considers whether the alleged facts, taken

7 in the light most favorable to plaintiff, show that defendants' conduct violated a constitutional

8 right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grds. in Pearson*, 555 U.S.

9 at 223.  In resolving this first inquiry, the court determines whether the alleged facts, taken in the

10 light most favorable to the plaintiff, show that defendants were reasonable in their belief that their

11 conduct did not violate the Constitution.  *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir.

12 2003) (citing *Saucier*).  In other words, even if defendants' actions did violate the Fourth

13 Amendment, a "reasonable but mistaken belief that [their] conduct was lawful would result in the

14 grant of qualified immunity."  *Id.*; *see also Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076

15 (9th Cir. 2011) (noting an officer is entitled to qualified immunity for unlawful arrest if he had

16 probable cause or if "it is *reasonably arguable* that there was probable cause for the arrest")

17 (emphasis in original).  Qualified immunity thus "provides ample protection to all but the plainly

18 incompetent or those who knowingly violate the law."  *Id.* (quoting *Malley v. Briggs*, 475 U.S.

19 335, 341 (1986)).

20    Defendants are correct that "'[w]here an officer has an objectively reasonable,

21 good-faith belief that he is acting pursuant to proper authority he cannot be held liable if the

22 information supplied by other officers turns out to be erroneous.'"  *Torres v. City of Los Angeles*,

23 548 F.3d 1197, 1212 (9th Cir. 2008) (quoting *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir.

24 2005) (en banc), *rev'd on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012)

25 (en banc)).  To shield an officer from liability, the reliance must be objectively reasonable.  *Id.*;

26 *see also Motley*, 432 F.3d at 1081 (stating that officers "have an ongoing duty to make

27 appropriate inquiries regarding the facts received").

28 /////

12

1    The complaint's description of the interaction between Hendricks and Bustamante

2  and Epperson about the diary does not show Hendricks is entitled to qualified immunity.  Indeed,

3  it says only that they "forwarded the diary to Defendant Michelle Hendricks," who read it.  ECF

4  No. 2 ¶ 63.  Because the complaint does not recount what information Hendricks received from

5  Bustamante and Epperson nor suggest she made any "appropriate inquiries" about the diary, she

6  is not entitled to claim qualified immunity at this stage of the proceedings.

7    E.  Twentieth Claim, Ratification, Against Jones and the County

8    In his twentieth claim, plaintiff alleges defendants' "cavalier rejection" of his

9  citizen complaint constitutes a ratification of Bustamante's and Epperson's actions.  ECF No. 2

10  ¶¶ 232-234 b.  Defendants argue this rejection does not constitute a ratification giving rise to

11  liability under 42 U.S.C. § 1983.

12    Both a municipality and a municipal officer in his official capacity, acting as a

13  policymaker, "may be held liable for a constitutional violation if a final policymaker ratifies a

14  subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004); *Larez*, 946 F.3d at 645-

15  46.  To constitute ratification, the official must "approve a subordinate's decision *and the basis*

16  *for it* before the policymaker will be deemed to have ratified the subordinate's discretionary

17  decision."  *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (emphasis in original).  "[A]

18  policymaker's mere refusal to overrule a subordinate's completed act does not constitute

19  approval."  *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

20    Plaintiff alleges Jones rejected his complaint about Bustamante and Epperson

21  without looking at the proffered medical records and photographs.  Viewing the complaint in the

22  light most favorable to plaintiff, this is sufficient to plead ratification, if not robust.  *See Dorger v.*

23  *City of Napa*, No. 12-cv-440 YGR, 2012 WL 3791447, at *5-6 (N.D. Cal. Aug. 31, 2012)

24  (ratification shown by fact city delayed investigation and disregarded evidence contradicting

25  officers' account).

26  /////

27  /////

28  /////

13

1    IV.  NEVADA COUNTY DEFENDANTS' MOTION TO DISMISS

2         A.  Fifth Claim Against the County and Royal

3              As noted above, to state a claim against the County, plaintiff must identify the

4    challenged policy or custom, explain how it was deficient, explain how it caused the plaintiff

5    harm, and reflect how it "amounted to deliberate indifference, i.e.[,] explained how the deficiency

6    involved was obvious and the constitutional injury was likely to occur." *Young v. City of Visalia*,

7    687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).  Plaintiff describes the alleged violations, but has

8    said only that the County and Royal failed to supervise, investigate and discipline employees.

9    ECF No. 2 ¶ 151b.   He also alleges that Royal conspired to fabricate a false basis upon which to

10   claim plaintiff had not complied with the requirements for securing service of subpoena and was

11   aware of Nelson's refusal to process the subpoena for service and DeVogelaere's collusion in

12   Placer County's improper search of plaintiff's property.

13             These allegations are even thinner than the corresponding claim against

14   Sacramento County and Jones, which the court has found insufficiently pleaded.  Plaintiff has

15   described single, isolated incidents of Nevada County employees' alleged violations of his First

16   and Fourth Amendment rights, an insufficient basis upon which to claim a failure to train,

17   investigate or discipline.  This claim is not bolstered by plaintiff's claim that Royal colluded with

18   Nelson, as that does not implicate his supervisory role.  Nevertheless, he will be given leave to

19   amend these allegations if he is able to do so within the strictures of Rule 11.

20        B.  Ninth Claim Against Royal and Nelson

21             Plaintiff alleges Royal and Nelson violated his First Amendment right of access to

22   the courts when they conspired to return the subpoenas for Royal's appearance at the Placer

23   County hearing and when Royal failed to appear.

24             Defendants argue the complaint is dependent on legal conclusions and does not

25   adequately explain how the alleged manipulation of the subpoena violated plaintiff's right of

26   access to the courts.  They note Royal was subpoenaed "to clarify Ms. Carter's declaration about

27   firearms and permits and her accuracy," and question how "Royal could have clarified a

28   /////

14

1   declaration by another concerning Plaintiff's firearms beyond what Plaintiff could have testified

2   to himself . . . ."  ECF No. 2-1 at 3 (subpoena); Mot. to Dismiss., ECF No. 28 at 17-18.

3           Plaintiff counters that the right of access to the courts protected by the First

4   Amendment encompasses the right to defend and that he has adequately pleaded Royal's non-

5   appearance meant he "was unable effectively to present his defense."  ECF No. 2 ¶ 110;  Opp'n,

6   ECF No. 31 at 10.

7           "The right of access to the courts is subsumed under the first amendment right to

8   petition the government for redress of grievances," *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d

9   1310, 1314 (9th Cir. 1989), and encompasses both the right to bring and defend against litigation.

10  *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 705 (9th Cir. 1992).

11          Plaintiff relies on *Hadsell v. Commissioner of Internal Revenue Service* to argue

12  that Nelson's refusal to route the subpoena for proper service and Royal's failure to appear

13  violated his rights.  107 F.3d 750 (9th Cir. 1997).  In that case, Hadsell, an incarcerated prisoner,

14  petitioned the Internal Revenue Service for  a redetermination of taxes owed and asked the tax

15  court to issue subpoenas for various tax records in the possession of the local police who had

16  arrested him on an unrelated matter.  *Id.* at 751.  Relying on 28 U.S.C. § 1915, the tax court

17  refused because petitioner, who was indigent, could not pay the necessary fees and then rejected

18  most of petitioner's claims about his taxes.

19          The Ninth Circuit declined to find § 1915 unconstitutional, but rather suggested

20  the tax court could have granted petitioner a continuance to retrieve his tax records from the local

21  police.  It commented on the importance of the records petitioner sought, noting petitioner "did

22  not have adequate alternatives for proving his claims."  *Id.* at 753.  It also declined to find any

23  infirmity in the tax court's refusal to deny petitioner's request to call witnesses when the

24  petitioner himself "could testify . . . as readily" as the proposed witness as to the facts petitioner

25  sought to elicit.  *Id.*  Although the Ninth Circuit suggested the failure to permit an indigent to

26  subpoena witnesses without paying the costs could present constitutional problems, it further

27  suggested those problems would arise only when the evidence sought was essential to a

28  /////

1  presentation of the case.  *Hadsell* provides little assistance to plaintiff in this case, as he has not

2  identified what he would have elicited from Royal that was not otherwise available.

3       In *Christopher v. Harbury*, the Supreme Court discusses a claimed denial of access

4  to the courts based on official acts, which "may allegedly have caused the loss or inadequate

5  settlement of a meritorious case."  536 U.S. 403, 413-14 (2002).  The court said that "the

6  underlying cause of action, whether anticipated or lost, is an element that must be described in the

7  complaint, just as much as allegations must describe the official acts frustrating the litigation."

8  *Id*. at 415.  Plaintiff's conclusory allegation that Royal's non-appearance meant he was unable to

9  present his defense effectively comes nowhere near meeting *Harbury*'s pleading requirements.

10  Plaintiff will be given an opportunity to amend this portion of his complaint.

11       C.  Tenth Claim Against Royal and Nelson

12       In his tenth claim, plaintiff avers Royal and Nelson denied him equal protection

13  because they did not refuse to comply with subpoenas submitted by similarly situated people and

14  did not falsely claim these similar subpoenas were insufficiently served.  ECF No. 2 ¶¶ 182-183.

15       Defendants argue plaintiff has not shown he is a member of a protected class.

16  ECF No. 28 at 22.  Plaintiff counters he is making a "class of one" equal protection claim and so

17  does not need to allege membership in a protected class and has adequately alleged defendants

18  refused to carry out their non-discretionary duty to serve subpoenas without a rational basis.  ECF

19  No. 31 at 12.  In reply defendants note the alleged class-of-one violation "is completely lacking in

20  factual support."  Reply, ECF No. 34 at 4.

21       In *Village of Willowbrook v. Olech*,  the Supreme Court recognized as viable

22  "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she had

23  intentionally been treated differently from others similarly situated and that there is no rational

24  basis for the difference in treatment."  528 U.S. 562, 564 (2000).  To make a "class of one" equal

25  protection claim plaintiff must meet three elements: the defendants "(1) intentionally (2) treated

26  [plaintiff] differently than other similarly situated [people seeking to have a subpoena served],

27  (3) without a rational basis."  *Gearhart v. Lake Cnty., Mont*., 637 F.3d 1013, 1022 (9th Cir.), *cert.*

28  *denied*, ___ U.S. ___, 132 S. Ct. 249 (2011).  Although the "similarly situated" analysis does not

16

1    lend itself to formulas, courts have said that "dismissal at the pleading stage is appropriate where

2    the plaintiff fails to allege facts tending to show that it was similarly situated to any one of the

3    comparators." *Nordmeyer v. Cundiff*, No. 10-cv-792 DRH, 2011 WL 4529422, at *5 (S.D. Ill.

4    Sept. 28, 2011).  As to the basis of the treatment, the pleading requirement may be satisfied by

5    "the pattern and nature of defendants' alleged conduct," which can "do the work of demonstrating

6    the [defendants'] improper discriminatory purpose." *Geinosky v. City of Chicago*, 675 F.3d 743,

7    748 (7th Cir. 2012).

8            Plaintiff has not come close to meeting this pleading standard:  he has not

9    identified any comparators, but only alleged that there are individuals who have "delivered

10   properly issued subpoenas to the Nevada County Sheriff's Office for service upon Defendant

11   Royal and who have likewise paid the requisite witness and service fees."  ECF No. 2 ¶ 181.  He

12   has described a comparator with a high degree of similarity to himself, but has provided no

13   factual support to give plausibility to his claim that such a comparator exists.  Moreover, he has

14   done nothing but allege the treatment was not rational without fleshing out the claim.  He will be

15   given leave to amend this claim, if he can.

16          D.  Eleventh Claim Against Royal and Nelson

17          Plaintiff alleges he had "a legitimate claim of entitlement under California law to

18   have his properly issued subpoena served on Defendant Royal," and he was deprived of that

19   property interest without due process when Royal and Nelson returned the subpoena to him.  ECF

20   No. 2 ¶¶ 188-189.

21          Defendants argue that plaintiff does not have a property interest in the service of

22   the subpoena and that plaintiff had adequate remedies at state law for the alleged failure to honor

23   a subpoena.  ECF No. 28 at 23-24.

24          Plaintiff says the state remedies, contempt proceedings against Royal, were not

25   adequate in this case; he does not address defendants' argument that he had no property interest in

26   service of the subpoena.  ECF No. 31 at 13.

27          "[T]he Due Process Clause provides that certain substantive rights — life, liberty,

28   and property — cannot be deprived except pursuant to constitutionally adequate procedures."

17

1    *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  A claim for a procedural due

2    process violation has two distinct elements: the deprivation of a constitutionally protected liberty

3    or property interest and denial of adequate procedural protection.  *Krainski v. Nevada ex rel. Bd.*

4    *of Regents of Nev. Sys. of Higher Educ.,* 616 F.3d 963, 970 (9th Cir. 2010) (citing *Brewster v. Bd.*

5    *of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).  Plaintiffs must first

6    establish a property or liberty interest deserving of constitutional protection before a court

7    addresses whether adequate process was denied.  *See Loudermill*, 470 U.S. at 541 ("Respondents'

8    federal constitutional claim depends on their having had a property right in continued

9    employment."); *Brewster*,149 F.3d at 983 ("[O]nce a court determines that a protected property

10   interest has been taken, 'the question remains what process is due.'") (quoting *Morrissey v.*

11   *Brewer*, 408 U.S. 471, 481 (1972)).

12            In *Town of Castle Rock v. Gonzales*, the Supreme Court considered whether a

13   person has a constitutionally protected property interest in having the police enforce a restraining

14   order when they have probable cause to believe the order has been violated.  545 U.S. 748, 750-

15   51 (2005).  The Court acknowledged the state law roots of the underlying substantive issue, but

16   said that federal law determines whether that interest is a legitimate claim of entitlement protected

17   by due process.  *Id*. at 757.  It considered whether the statute at issue made enforcement of orders

18   mandatory and then said "[e]ven if the statute could be said to have made enforcement of

19   restraining orders 'mandatory' . . . that would not necessarily mean that state law gave *respondent*

20   an entitlement to *enforcement* of the mandate.  Making the actions of government employees

21   obligatory can serve various legitimate ends other than the conferral of a benefit."  *Id*. at 764-65

22   (emphases in original).  Moreover, it said that "entitlement to nothing but procedure" cannot be

23   the basis of a property interest.  *Id*. at 764.  Finally, it mused that a property right in the

24   enforcement of restraining orders "would not . . . resemble any traditional conception of property"

25   and would arise "*incidentally*, not out of some new species of government benefit or service, but

26   out of a function that government actors have always performed . . . ."  *Id*. at 766-67.

27            Plaintiff alleges two provisions of law give rise to his property right in the service

28   of the subpoena.  The first is California Code of Civil Procedure § 262.1, which reads "[a] sheriff

                                                       18

1   or other ministerial officer is justified in the execution, and shall execute, all process and orders

2   regular on their face and issued by competent authority, whatever may be the defect in the

3   proceedings upon which they were issued." This does not give rise to a property interest, as it

4   "immunizes the Sheriff from liability for executing 'process and orders' which are regular on

5   their face." *George v. Cnty. of San Luis Obispo*, 78 Cal. App. 4th 1048, 1054 (2000).

6            The second is Government Code § 26608, which says "[t]he sheriff shall serve all

7   process and notices in the manner prescribed by law."[4] As the *Castle Rock* court observed, this

8   statute does not obviously confer a benefit on those with process to be served, but is rather one

9   provision in a chapter establishing county officials and defining their duties. Moreover, it is

10  procedural: the service of process is undertaken only as part of an underlying proceeding. As in

11  *Castle Rock*, this procedural statute does not give rise to a property interest.

12           Finally, the claim arises "out of a function that government actors have always

13  performed," and so does not give rise to a property interest. *See also Boldt v. Myers*, No. 07-CV-

14  0008 PK, 2007 WL 2463245, at *9 (D. Or. Aug. 28, 2007) (rejecting claim that elder abuse

15  statutes created a property interest); *Campbell v. W. Pittston Borough*, Civil Action No. 3:06-CV-

16  0387, 2008 WL 417692, at *2-3 (M.D. Pa. Feb. 13, 2008) (rejecting claim that statute giving

17  person opportunity to object to subpoena served on a third party did not give rise to property

18  interest).

19           This claim is dismissed without leave to amend.

20       E.  Eighteenth Claim

21           Plaintiff claims DeVogelaere and Royal conspired to violate plaintiff's Fourth

22  Amendment rights, alleging some of the Placer County defendants entered plaintiff's property on

23  more than one occasion in August 2013 and defendant DeVogelaere concealed the illegal

24  conduct, conspired to fabricate a pre-textual reason for the entries and failed to document the

25  actions of Placer County law enforcement. ECF No. 2 ¶¶ 103-107, 109, 117, 224. Indeed on one

26  ────────────────

27  [4] "The process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to the person and requiring the person's attendance . . . ." Cal. Code. Civ. P. § 1985(a). "Process" as used in the chapter defining sheriffs' duties "includes all writs, warrants,

28  summons, and order of courts of justice or judicial officers." Cal. Gov't Code § 26660.

1    occasion, Nevada County deputies responded to a call of armed men on plaintiff's property, only

2    to find the "armed men" were Placer County officers; Nevada County officials later claimed this

3    confrontation was the result of a failure to communicate.  *Id.* ¶ 115.  Royal was aware of the

4    multiple searches conducted by Placer County officers.  *Id.* ¶ 117.

5            The elements of a conspiracy claim under section 1983 are (1) the existence of an

6    agreement, either express or implied, to deprive plaintiff of his constitutional rights and (2) a

7    deprivation of rights resulting from the agreement.  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir.

8    2010).  Although the conspiratorial agreement need not be overt, a complaint must include some

9    factual basis to support the inference that defendants' acts were propelled by the agreement.

10   *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999); *Harris v.*

11   *Clearlake Police Dep't*, No. 12-0864-YGR, 2012 WL 3042942, at *9 (N.D. Cal. July 25, 2012).

12   The plaintiffs "must state specific facts to support the existence of the claimed conspiracy."

13   *Burns v. Cnty. of Kings*, 883 F.2d 819, 821 (9th Cir. 1989); *Buckey v. Cnty. of Los Angeles*, 968

14   F.2d 791, 794 (9th Cir. 1992).  Vague claims that defendants were involved in a conspiracy to

15   deprive plaintiff of his rights will not suffice.  *Hansen v. Black*. 885 F.2d 642, 646 (9th Cir.

16   1989).

17

18           Defendants argue plaintiff has not met this pleading standard because he has not

19   suggested Royal and DeVogelaere were involved in any searches or otherwise described their

20   involvement in any conspiracy with the necessary specificity.  ECF No. 28 at 19.  Plaintiff

21   contends his pleading is sufficient because it shows Nevada County officials acquiesced in Placer

22   County officials' illegal activities and indeed covered them up.  ECF No. 31 at 15.

23           This claim is not adequately pleaded.   Plaintiff has not described how the alleged

24   acquiescence in and failure to document the illegal conduct violated his Fourth Amendment

25   rights.  Citing *Bell v. City of Milwaukee*, he argues that a conspiracy cause of action exists for the

26   cover-up of the violation of civil rights.  746 F.2d 1205, 1260-65 (7th Cir. 1984), *overruled on*

27   *other grounds, Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).   In *Bell*, however, the court found the

28   conspiracy to cover-up constitutional violations actionable because the cover-up interfered with

1   the plaintiffs' right of access to the courts.  *Id.*; *see also Hutchinson v. Grant*, 796 F.2d 288 (9th

2   Cir. 1986) (cover-up after alleged police misconduct did not state a claim because "[n]othing the

3   police did subsequent to the incident . . . could affect [the city's] liability for the incident").

4   Plaintiff alleges only that the defendants engaged in a cover-up without describing the impact of

5   that concealment.  Plaintiff will be given leave to amend this portion of the complaint.

6          F.  Nineteenth Claim against Nelson and Royal

7                  Plaintiff alleges defendants Nelson and Royal conspired to violate plaintiff's right

8   of access to the courts, equal protection and procedural due process by manufacturing a false

9   basis upon which to claim plaintiff had insufficiently served the subpoena on Royal.  ECF No. 2

10  at 229.  As noted above, one of the elements of a conspiracy claim is a deprivation of rights.

11  *Avalos*,  596 F.3d at 592.  As the plaintiff has not adequately pleaded any of the underlying

12  violations, this claim is not adequately pleaded.  He will be given the opportunity to replead, if he

13  can.

14         G.  Twentieth Claim against Nevada County and Salavar

15                 Plaintiff again challenges the "cavalier rejection" of his complaints by the County

16  and by defendant Salavar, undersheriff of Nevada County, arguing the rejection constitutes

17  ratification of the subordinates' actions.  ECF No. 2 ¶¶ 234 c.  Unlike the ratification claim

18  against Sacramento County, this claim is not adequately pleaded, as there is nothing apart from

19  the defendants' refusal to overrule a completed act, which is insufficient to show ratification.

20  *Christie*, 176 F.3d at 1239.

21                 IT IS THEREFORE ORDERED that:

22                 1.  The motion to dismiss filed by the Sacramento County defendants, ECF No. 22,

23  is denied as to claim six; granted without leave to amend as to claims two, four, seven and eight;

24  and granted with leave to amend as to claims one, five, and twenty;

25                 2.  The motion to dismiss filed by the Nevada County defendants, ECF No. 27, is

26  granted without leave to amend as to claim eleven; and granted with leave to amend as to claims

27  five, nine, ten, eighteen, nineteen and twenty; and

28  /////

3.  The amended complaint is due within twenty one days of the date of this order.

DATED:  November 14, 2014.

_____
UNITED STATES DISTRICT JUDGE