1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD MALOTT,                          No.  2:14-CV-1040 KJM EFB

12                  Plaintiff,

13         v.                                  ORDER

14   PLACER COUNTY, et al.,

15                  Defendants.

16

17

18              This matter is before the court on the motions by defendants Placer County, Ken

19   Addison and Matt Hardcastle, and defendants Detective Michelle Hendricks and Deputy Darin

20   Epperson to dismiss plaintiff's third amended complaint under Federal Rule of Civil Procedure

21   12(b)(6).  *See* ECF Nos. 64, 66.  Plaintiff opposes the motions.  *See* ECF Nos. 70, 71.  Defendants

22   have replied.  *See* ECF Nos. 72, 73.  The court found the matter appropriate for resolution without

23   a hearing.

24              As explained below, the court GRANTS in part and DENIES in part defendants'

25   motions.

26   /////

27   /////

28   /////

1    I.    BACKGROUND

2          The court has reviewed the facts of this case in detail in its prior orders.  *See, e.g.*,

3    ECF Nos. 38, 60.  It recounts only facts relevant here in light of the pending motions.

4          This case arises from plaintiff's arrest for illegally carrying a concealed handgun

5    after he was pulled over for rolling through a stop sign on April 25, 2013 in Sacramento County.

6    Third Am. Compl. (the TAC), ECF No. 63 ¶ 1.  Specifically, on the evening of April 25, 2013,

7    defendants Sacramento County Sheriff's Deputies Javier Bustamante (Bustamante) and Darin

8    Epperson (Epperson) stopped plaintiff for rolling through a stop sign.  *Id.* ¶¶ 21–22.  Plaintiff

9    exited his vehicle as requested by Epperson.  *Id.* ¶ 23.  Epperson conducted a pat-down search of

10   plaintiff and, during the search, located a handgun.  *Id.* ¶¶ 24–25.  At the time of the search,

11   plaintiff did not have a valid California Concealed Weapons permit.  *Id.* ¶ 26.  After finding the

12   handgun, Bustamante and Epperson placed plaintiff under arrest for carrying a concealed firearm

13   without a permit, *id.* ¶ 27, handcuffed plaintiff, and placed him in the back of their police patrol

14   car, *id.* ¶ 28.

15         Bustamante then searched plaintiff's car, *id.* ¶ 30, and located a book titled "Daily

16   Reminder Standard Diary" (the diary), *id.* ¶ 31.  The diary contained entries regarding plaintiff's

17   charitable aid missions, church donations, foreign travels, plans for travel, past, present and

18   potential future girlfriends, recollections of dreams, ideas for self-improvements, trials and

19   tribulations of daily life, metaphysical musings, and thoughts and speculations on the meaning

20   and nature of life.  *Id.* ¶ 56.  The diary was closed and on the passenger's seat.  *Id.* ¶ 32.

21   Bustamante and Epperson removed the diary from the car and read a portion of it.  *Id.* ¶ 33.

22   Bustamante then later booked the diary into evidence along with other items taken from the car.

23   *Id.* ¶ 34.

24         Plaintiff was taken to Mercy San Juan Hospital after experiencing physical distress

25   in the back of the patrol car.  *Id.* ¶¶ 35, 47.  Plaintiff alleges Bustamante and Epperson ignored his

26   request for medical care for a substantial amount of time.  *Id.* ¶ 38.  In addition, plaintiff alleged

27   /////

28   /////

2

1   Bustamante closed the patrol car door on his head and later used a small hard object known as a

2   Kubaton to push twice on plaintiff's sternum on two separate occasions before requesting

3   emergency medical care.  *Id.* ¶¶ 39, 42–43, 46.

4            On June 4, 2013, Epperson gave the diary to defendant Michelle Hendricks, a

5   Detective with the Sacramento County Sheriff's Department.  *Id.* ¶ 54.  Hendricks read the diary.

6   *Id.*  Hendricks discussed with and forwarded the diary to defendant Matt Hardcastle, a Detective

7   with the Placer County Sheriff's Department, who also read the diary.  *Id.* ¶¶ 10, 54.

8            Hendricks, acting in conjunction with Epperson and Hardcastle, photocopied and

9   published the diary to at least three people, including plaintiff's former girlfriend Clorese Carter

10   (Carter) and plaintiff's long-time friend Julie Ferneyhough (Ferneyhough) who worked and lived

11   with her family in one of the houses on the Malott Ranch at the time.  *Id.* ¶ 58.  The Malott Ranch

12   consists of five contiguous parcels of land owned by plaintiff's immediate family and the family

13   trust.  *Id.* ¶ 19.  There are five single family residences, including plaintiff's residence, and two

14   guest houses on the Malott Ranch.  *Id.*  The plaintiff's residence sits on a private road protected

15   by multiple electronically coded gates and signs indicating the ranch is private property.  *Id.*

16            Hardcastle, Epperson and Hendricks coordinated communications with Carter and

17   Ferneyhough over a period of months.  *Id.* ¶ 60.  At least one interview was attended and

18   conducted by both Hendricks and Epperson jointly.  *Id.*  Another meeting was attended and

19   conducted by Hendricks and Hardcastle, also jointly.[2]  *Id.*  One meeting occurred on June 21,

20   2013, when Epperson and Hendricks met with Carter in Epperson's squad car in a parking lot.  *Id.*

21   ¶ 61.  On another occasion, Hendricks interviewed both Carter and Ferneyhough at Carter's

22   home; Hendricks stated, during the interview, it was unusual for her to be acting outside of her

23   county and it was the first time she had done so.  *Id.* ¶ 62.  During this interview, Hendricks

24   showed Carter and Ferneyhough portions of plaintiff's diary that contained entries about them.

25

26   _____

27        [2] It is unclear from the Third Amended Complaint whether the meeting on June 21, 2013 was the one attended and conducted by both Hendricks and Epperson, or if they jointly conducted the interview where both Carter and Ferneyhough were present at Carter's home.

28

1    *Id.*  On separate occasions, Hendricks and Hardcastle explicitly told Ferneyhough they were

2    working together.  *Id.* ¶ 65.

3         Between August 13, 2013 and August 21, 2013, defendant Ken Addison, a

4    Sheriff's Deputy with the Placer County Sheriff's Department, *id.* ¶ 13, and at least three other

5    Placer County Sheriff's Department Deputies went to the Malott Ranch on multiple occasions

6    without warrants or exigent circumstances to conduct "welfare checks," *id.* ¶¶ 73, 77, 83, wearing

7    black swat-type technical gear that bore little or no indicia of law enforcement, *id.* ¶ 75.  Addison

8    was allegedly selected for the visits to the Malott Ranch because of his physically intimidating

9    appearance.  *Id.* ¶ 74.  Addison and other unnamed defendants[3] did not believe a warrant,

10   probable cause, consent, or exigent circumstance was needed to authorize their entry.  *Id.* ¶ 78.

11        The Nevada County Sheriff's Department allegedly communicated with Placer

12   County officials before the Placer County Deputies' visits to the Malott Ranch between August

13   13 and 21, 2013, and allegedly agreed to not interfere.  *Id.* ¶ 79.  The Nevada County Sheriff's

14   Department also actively participated by providing Placer County officials with the code to open

15   the locked security gate surrounding plaintiff's property.[4]  *Id.*  On one visit, Addison left his

16   business card and a request for plaintiff to call him.  *Id.* ¶ 80.  On or about August 13, 2013,

17   Addison informed plaintiff during a phone conversation the Nevada County Sheriff's Department

18   knew Addison and others had visited the Malott Ranch.  *Id.*

19

20   _____

21        [3]  The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through
     discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the
22   alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v. Thompson*,
     177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.
     1980)) (modifications in the original).  Plaintiff is warned, however, that such defendants will be
23   dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint
     would be dismissed on other grounds.'"  *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is
24   further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss
     defendants who have not been served within 120 days after the filing of the complaint unless
25   plaintiff shows good cause, is applicable to doe defendants.  *See Glass v. Fields*, No. 1:09-cv-
     00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive*
26   *Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27,
     2011).
27        [4]  The third amended complaint does not specify how officials from the Nevada County
     Sheriff's Department obtained the code to the security gate.
28

On the final occasion Addison and the unnamed defendants visited the Malott Ranch, they allegedly entered the property by climbing over the locked gate, because they were unable to go through the electronic gates as on prior occasions. *Id.* ¶ 88.  Sometime in mid-August 2013,[5] after the last visit, Hardcastle advised Ferneyhough and her family they needed to move off the ranch because their lives were in danger in light of Placer County's plans to raid the ranch.  Hardcastle implied there would be a gunfight and told Ferneyhough if her children were killed in the process, it would be "on her." *Id.* ¶ 89.  During a recorded interview at the Placer County Sheriff's Department, Hardcastle told Ferneyhough that Placer County and Sacramento County were sharing information about plaintiff. *Id.* ¶ 90.  At one point, Addison told plaintiff's brother on the phone that he was tired of chasing plaintiff and threatened to have a Placer County warrant issued for plaintiff's arrest should plaintiff refuse to meet with him. *Id.* ¶ 93.

Plaintiff's third amended complaint alleges twelve claims.  In their motions, the Sacramento County and Placer County defendants do not seek to dismiss all of the claims.  Both sets of defendants do seek dismissal of claim number ten, conspiracy to violate plaintiff's Fourth Amendment rights in the search of his diary, against defendants Epperson, Hendricks, and Hardcastle.  The Placer County defendants also seek dismissal for the first time of the following claims: claim number four, unreasonable search of the contents of the diary in violation of the Fourth Amendment, against defendant Hardcastle; claim number six, unreasonable search of the Malott Ranch in violation of California Civil Code section 52.1, against defendants Addison and Placer County; and, claim number nine, threat of issuing an arrest warrant in violation of California Civil Code section 52.1, against defendants Addison and Placer County.

II.     LEGAL STANDARD ON MOTION TO DISMISS

A party may move to dismiss the complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the

---

[5] The third amended complaint actually states the last visit by the Placer County deputies occurred in mid-August 2014; however, as the other events in the complaint occurred in 2013, this court presumes the date is misstated.

1   complaint lacks a "cognizable legal theory" or if its factual allegations do not support a

2   cognizable legal theory.  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122

3   (9th Cir. 2013).  The court assumes the complaint's factual allegations are true and draws all

4   reasonable inferences in favor of the nonmoving party.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5   (2009); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply

6   to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286

7   (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly

8   subject to judicial notice," or to material attached to or incorporated by reference into the

9   complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

10          A complaint need contain only a "short and plain statement of the claim showing

11   that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations,"

12   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than

13   unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*,

14   556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of a claim's elements do

15   not alone suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Evaluation under Rule 12(b)(6) is a

16   context-specific task drawing on "judicial experience and common sense."  *Id.* at 679.

17   III.   DISCUSSION

18          A.     Tenth Claim: Conspiracy to Search Diary against Epperson, Hendricks, and
                    Hardcastle

19

20          This is defendants' second attempt to dismiss this claim.  The claims against the

21   individual defendants are brought under 42 U.S.C. § 1983.

22          The elements of a conspiracy claim under section 1983 are (1) the existence of an

23   agreement, either express or implied, to deprive plaintiff of his constitutional rights and (2) a

24   deprivation of rights resulting from the agreement.  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir.

25   2010).  Although the conspiratorial agreement need not be overt, a complaint must include some

26   factual basis to support the inference that defendants' acts were propelled by the agreement.

27   *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999); *Harris v.*

28   *Clearlake Police Dep't*, No. 12-0864, 2012 WL 3042942, at *9 (N.D. Cal. July 25, 2012).  The

1    plaintiff must state "specific facts to support the existence of a [claimed] conspiracy." *Buckey v.*

2    *Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992); *Burns v. Cnty. of Kings*, 883 F.2d 819,

3    821 (9th Cir. 1989).  Allegations in a complaint "may not simply recite the elements of a cause of

4    action, but must contain sufficient allegations of underlying facts . . . ." *AE ex rel. Hernandez v.*

5    *Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citations omitted).  Vague claims that

6    defendants were involved in a conspiracy to deprive plaintiff of his rights will not suffice.  *See*

7    *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *see also Lacey v. Maricopa Cnty.*, 693 F.3d

8    896, 937 (9th Cir. 2012) (noting conclusory conspiracy allegations are insufficient to provide

9    notice to defendants); *Cabrera v. Maddock*, No. 10-00611, 2015 WL 3466398, at *7 (E.D. Cal.

10   June 1, 2015) (noting "a bare allegation that defendants conspired to violate plaintiff's

11   constitutional rights will not suffice to give rise to a conspiracy claim under section 1983").  "To

12   be liable, each participant in the conspiracy need not know the exact details of the plan, but each

13   participant must at least share the common objective of the conspiracy." *United Steelworkers of*

14   *Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc).

15           The Sacramento County defendants argue the third amended complaint does not

16   allege any facts that would allow the court to infer either Epperson or Hendricks entered into an

17   agreement to deprive plaintiff of his constitutional rights.  ECF No. 64-1 at 5.  The Sacramento

18   County defendants also argue plaintiff has not alleged a deprivation of constitutional rights

19   resulting from any agreement alleged.  ECF No. 64-1 at 6–7.  Specifically, these defendants

20   contend plaintiff instead seems to be basing the section 1983 conspiracy claim on the "alleged

21   violation of random state torts, such as defamation and false light."  ECF No. 64-1 at 5.

22           The Placer County defendant, Hardcastle, argues plaintiff does not allege any

23   direct communication between Hardcastle and Epperson, or discussions of plaintiff between

24   Hardcastle and Epperson or Hendricks.  ECF No. 66-1 at 11.  Hardcastle also argues reproduction

25   and distribution of the diary by Epperson, Hendricks and Hardcastle is not sufficient to show

26   conspiracy.  *Id.*

27   /////

28   /////

1    Plaintiff responds that defendants' joint actions in disseminating the content of the

2    diary would have been unlikely without an agreement of the defendants.  ECF No. 70 at 5.

3    Epperson forwarded the diary to Hendricks who forwarded it to Hardcastle, and Hendricks and

4    Hardcastle subsequently discussed and acted jointly to target plaintiff.  *Id.* at 4.  Plaintiff further

5    alleges Hardcastle, Epperson and Hendricks acted in concert when they coordinated

6    communication with plaintiff's friends over the course of months.  *Id.*  For example, Epperson

7    and Hendricks conducted at least one interview jointly, even though the defendants worked for

8    different sheriff's departments.  *Id.*  Additionally, plaintiff alleges Hendricks told her interviewees

9    that it was unusual for her to be operating outside of her county, and Hendricks and Hardcastle

10   both stated on at least one occasion they and their counties were working together.  ECF No. 70

11   at 5.

12   First, the court finds defendants' argument that plaintiff has not stated a

13   constitutional violation unpersuasive.  Plaintiff has stated a violation of the Fourth Amendment,

14   alleging defendants "violated [his] right to be free from unreasonable seizure of personal

15   property," in this case, the diary.  TAC ¶ 149.

16   Nevertheless, this claim is not adequately pled because plaintiff has not stated

17   "specific facts to support the existence of the claimed conspiracy."  *Buckey*, 968 F.2d at 794.

18   Plaintiff alleges Epperson, Hendricks and Hardcastle entered into a conspiracy to violate

19   plaintiff's Fourth Amendment rights.  TAC ¶ 148.  Plaintiff also alleges Epperson forwarded the

20   diary to Hendricks, and they discussed the contents of the diary together.  *Id.* ¶¶ 54, 55.  However,

21   plaintiff has not sufficiently alleged the existence of an agreement between Epperson and

22   Hendricks with respect to the initial constitutional violation, e.g., the unlawful search and seizure

23   of the diary.

24   In *Lacey, supra,* the Ninth Circuit noted the conspiracy allegations there, regarding

25   one of the defendants, were conclusory because the complaint failed to provide the scope of the

26   conspiracy: the role of one of the alleged conspirators, and when or how the conspiracy operated.

27   693 F.3d at 937.  Here, similarly, plaintiff has only provided allegations of "defendants

28   gratuitously show[ing] copies of the diary to friends, acquaintances and persons," "defendants

8

1    us[ing] their possession of diary to disseminate false, erroneous or fictional and injuries

2    information," and "Hardcastle, Epperson and Hendricks [meeting] together with Carter."  TAC

3    ¶ 148.  Plaintiffs argue that the fact Hardcastle, Epperson and Hendricks coordinated

4    communications and met together with plaintiff's friends demonstrates a conspiracy.  ECF No. 70

5    at 5.  Though in a motion to dismiss, the factual allegations of a complaint are accepted as true,

6    they still must be sufficient to raise a right to relief above the speculative level.  *Twombly*,

7    550 U.S. at 555.  Here, plaintiff has not met this sufficiency hurdle.  While "[d]irect evidence of

8    improper motive or an agreement to violate a plaintiff's constitutional right will only rarely be

9    available," plaintiff still needs to articulate specific facts that would allow the court to draw

10   inferences that defendants shared a common goal of depriving plaintiff of his constitutional

11   rights.  The mere fact the defendants here communicated together is not enough.

12          Accordingly, the Sacramento County and Placer County defendants' motions to

13   dismiss plaintiff's claim for conspiracy are both GRANTED, but with leave to amend.

14          B.      Fourth Claim:  Invasion of Privacy With Respect to Diary Against Hardcastle

15          Law enforcement officers are shielded from suit unless their conduct violates

16   "clearly established statutory or constitutional rights of which a reasonable person would have

17   known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity test comprises

18   two inquiries: (1) whether the facts plaintiff has alleged make out a violation of a constitutional

19   right; and (2) whether the right at issue was "clearly established" at the time of defendant's

20   alleged conduct.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The court has discretion in

21   determining the order of deciding the two prongs.  *Id.* at 240.  Because qualified immunity is an

22   affirmative defense, the burden of proof initially lies with the official asserting the defense.

23   *Harlow*, 457 U.S. at 812.  Here, the court looks at the second prong, considering whether the right

24   at issue was "clearly established" at the time of defendant's alleged conduct, because defendant

25   Hardcastle does not contest the first prong.

26   /////

27   /////

28
                                                    9

1    Under the second prong, the court must determine whether the constitutional right

2    was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grds. in*

3    *Pearson*, 555 U.S. at 223.  A right is clearly established when "it would be clear to a reasonable

4    officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  The

5    reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of

6    the conduct."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  This prong, in essence, is "an

7    inquiry into the objective reasonableness of the officer's belief in the *necessity* of his actions."

8    *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (original emphasis).[6]  In resolving

9    this inquiry, the court determines whether the alleged facts, taken in the light most favorable to

10   the plaintiff, show that defendants were reasonable in their belief that their conduct did not violate

11   the Constitution.  *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (citing *Saucier*,

12   533 U.S. at 201).  In other words, even if defendants' actions did violate the Fourth Amendment,

13   a "reasonable but mistaken belief that [their] conduct was lawful would result in the grant of

14   qualified immunity."  *Id.*; *see also Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir.

15   2011) (an officer is entitled to qualified immunity for unlawful arrest if he had probable cause or

16   if "it is reasonably arguable that there was probable cause for the arrest") (emphasis in original).

17   Qualified immunity thus "provides ample protection to all but the plainly incompetent or those

18   who knowingly violate the law."  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

19   Hardcastle, one of the Placer County Detective defendants, argues he is entitled to

20   qualified immunity for any claim relating to invasion of privacy caused by reading and

21   distributing plaintiff's diary, because plaintiff's allegations do not show that Hardcastle knew or

22   had any reason to believe that the methods used to obtain plaintiff's diary were inadequate or

23   incompetent.  ECF No. 66-1 at 5–6.  Specifically, Hardcastle argues plaintiff did not allege any

24   facts to show Hardcastle had any communications with Sacramento County Deputies Epperson or

25   Bustamante, who first located and seized the diary.  *Id.* at 6.

26   _____

27   [6] "While the constitutional violation prong concerns the reasonableness of the officer's *mistake of fact*, the clearly established prong concerns the reasonableness of the officer's *mistake of law*."  *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011) (italics in original).

28

Plaintiff counters he has had no opportunity to conduct discovery on what information Placer County Detective Hendricks, who first received the diary from Epperson, may have conveyed to Hardcastle along with the diary.  ECF No. 71 at 4–5.  Plaintiff argues the third amended complaint cannot be read to say Hardcastle made "appropriate inquiries" about the diary, and points to the court's previous orders rejecting Hendricks' analogous claim for qualified immunity.  *Id.* at 5 (referencing ECF No. 38 at 13).

The court agrees that the third amended complaint does not say anything akin to conceding Hardcastle made  "appropriate inquiries" about the diary.  Officers do "have an ongoing duty to make appropriate inquiries regarding the facts received."  *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) (en banc), *rev'd on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc).  The lack of "appropriate inquiries," therefore, must be taken in the light most favorable to plaintiff.  *See Pearson*, 555 U.S. at 223.  As the court found with respect to Hendricks in the prior order, ECF No. 38 at 13, because the third amended complaint does not recount what information Hardcastle received from Hendricks or imply that Hardcastle made any "appropriate inquiries" about the diary, Hardcastle is not entitled to claim qualified immunity under the second prong at this stage of the proceedings.

At this early stage, in considering the motion to dismiss, the court accepts plaintiffs' allegations as true, and is not uncommon,  finds granting  qualified immunity would be premature.  The issue may be raised again on a motion for summary judgment.  *See Akey v. Placer Cnty*, No. 14-2402, 2015 WL 1291436, at *8 (E.D. Cal. Mar. 20, 2015).

Accordingly, defendant Hardcastle's motion to dismiss plaintiff's fourth claim on the grounds of qualified immunity is DENIED.

C.    Sixth Claim: Illegal and Unreasonable Search of Malott Ranch in Violation of California Civil Code Section 52.1 against Addison and Placer County

1.    Addison

The California Bane Act prohibits any person from interfering by "threats, intimidation or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution . . . ."  Cal. Civ. Code § 52.1(a).  Although the Bane Act was initially

1  interpreted as applicable only to hate crimes, the California Supreme Court subsequently has

2  broadened its application to include any unconstitutional acts "so long as those acts were

3  accompanied by the requisite threats, intimidation, or coercion." *Venegas v. Cnty. of L.A.*, 32 Cal.

4  4th 820, 843 (2004).  In *Venegas*, the court allowed a Bane Act claim to proceed with a federal

5  section 1983 claim for an unreasonable seizure.  *Id.* at 827.  While in certain respects the

6  functional equivalent of a section 1983 claim to succeed, a Bane Act claim requires more than

7  evidence of a violation of rights.  *Davis v. City of San Jose*, 69 F. Supp. 3d 1001, 1007 (N. D. Cal.

8  2014).  Additionally, if the improper means requirement is satisfied, then, unlike section 1983, the

9  Bane Act can apply to statutory violations in addition to constitutional rights violations.  *Id.*

10             In *Shoyoye v. County of Los Angeles*, a California Court of Appeal considered

11  whether the Bane Act is satisfied "where coercion is inherent in the constitutional violation

12  alleged, as it is in an unreasonably prolonged detention, or does the statute require a showing of

13  coercion independent from the coercion inherent in the wrongful detention itself?"  203 Cal. App.

14  4th at 958. In *Shoyoye*, a clerical error resulted in the unlawful detention of a prisoner who had

15  been ordered released, and the California Court of Appeal rejected the prisoner's Bane Act claim

16  because:

17
> [W]here coercion is inherent in the constitutional violation alleged,
> i.e., an over-detention in County jail, the statutory requirement of
> "threats, intimidation, or coercion" is not met.  The statute requires
> a showing of coercion independent from the coercion inherent in
> the wrongful detention itself.

18

19

20  *Id.* at 959.

21             After *Shoyoye* was decided, the same California Court of Appeal decided

22  *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968, 968 (2013), in which an unresisting

23  handcuffed plaintiff was beaten and pepper-sprayed during a wrongful arrest.  There, the

24  defendants argued: "the Bane Act [did] not apply because coercion is inherent in an unlawful

25  arrest."  *Id.* at 978.  The *Bender* court concluded the defendants' contention had no merit,

26  distinguishing *Shoyoye* factually.  It found the Bane Act applied "because there was a Fourth

27  Amendment violation—an arrest without probable case—accompanied by the beating and pepper

28

spraying of an unresisting plaintiff, i.e. coercion that is in no way inherent in an arrest, either lawful or unlawful." *Id.* It went on:

> [A] wrongful detention that is "accompanied by the requisite threats, intimidation, or coercion"—"coercion independent from the coercion inherent in the wrongful detention itself" that is "deliberate or spiteful"—is a violation of the Bane Act. To the extent any language in the federal cases suggests otherwise, that language does not reflect California law.

217 Cal. App. 4th at 981 (internal citations omitted).

The Ninth Circuit recently has clarified whether a plaintiff bringing a Bane Act claim must introduce independent evidence showing threats, intimidation, or coercion. In *Lyall v. City of Los Angeles,* the Circuit found the district court had correctly determined a plaintiff in a search-and-seizure case had to have established  threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act.  *See* 807 F.3d 1178, 1196 (9th Cir. 2015).  In reaching its decision, the Circuit referenced *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 68–69, *as modified on denial of reh'g* (Mar. 6, 2015), in which the California Court of Appeal found that a wrongful arrest or detention alone does not state a cause of action under the Bane Act, which requires a plaintiff to show both an (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) that the interference or attempted interference was by threats, intimidation or coercion.  The court in *Allen* expressly stated that both are distinct elements under the Bane Act.  *Allen*, 234 Cal. App. 4th at 68 (citing *Longval v. Commissioner of Correction,* 535 N.E. 2d 588, 590–93 (1989), which analyzed the Massachusetts Civil Rights Act of 1979 upon which the Bane Act was modeled).  A plaintiff cannot attempt to satisfy two distinct elements by establishing only one, e.g., an unlawful or unconstitutional act.  In *Lyall*, the Circuit found *Allen* representative of the clear rule emerging from California cases, and in applying its reasoning found the district court in the underlying trial court proceeding did not err in requiring plaintiffs to show threats, intimidation or coercion independent from acts inherent in their detention and search.  807 F.3d at 1196.

Here, plaintiff alleges defendant Addison entered plaintiff's property without a warrant, consent or exigent circumstances.  TAC ¶ 125.  However, merely interfering with a right,

1   even if unlawfully, is not sufficient to constitute a threat, intimidation or coercion under the Bane

2   Act. *Lyall*, 807 F.3d at 1196. Rather, plaintiff must demonstrate that a constitutional violation

3   "occurred and that the violation was accompanied by threats, intimidation or coercion within the

4   meaning of the statute." *Chavez v. Cnty. of Kern*, No. 12-1004, 2014 WL 412562, at *8 (E.D. Ca.

5   Feb. 3, 2014). In evaluating the threatening or coercive conduct, the court must consider

6   "whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated

7   by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of*

8   *Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010) (citing *Winarto v. Toshiba America*

9   *Electronics Components, Inc.*, 274 F.3d 1276, 1289–90 (9th Cir. 2001) (officer's act of kicking in

10  a door, using a taser and screaming at plaintiff was sufficiently coercive).

11          Plaintiff has not alleged any such action with respect to defendant Addison.

12  Plaintiff alleges on August 20, 2013, Addison made a threat of obtaining an arrest warrant for

13  plaintiff in a phone conversation with plaintiff's brother. On the face of the third amended

14  complaint, it does not appear this threat accompanied a violation of the alleged constitutional

15  violation at issue here, that is, the unreasonable search of Malott Ranch; furthermore, plaintiff

16  alleges the threat in support of a separate Bane Act violation, which the court addresses below.

17  And though the third amended complaint alleges that Hardcastle in August 2013 told

18  Ferneyhough to leave the ranch with her family because there would likely be a raid resulting in a

19  gunfight, the complaint makes no allegation that Addison knew Hardcastle made such a

20  statement.

21          Plaintiff also alleges that Addison was selected for the visits to Malott Ranch

22  because of his large size, and that Addison, along with other unnamed co-defendants, wore black

23  swat-type technical gear with little or no indicia of law enforcement on these visits. TAC ¶¶ 74–

24  75. While these facts border on intimidation and coercion, in the context alleged here they are

25  inherent aspects of the alleged unreasonable search. Specifically, plaintiff has not alleged

26  defendant Addison used any force beyond that necessary to affect the search. *Compare Ruiz v.*

27  *Flores*, No. 14-179, 2015 WL 966148, at *11 (E.D. Cal. Mar. 4, 2015) (allegations failed to show

28  defendants used force beyond that necessary to effect unlawful search where plaintiff's

1    compliance was obtained by defendants physically restraining him and by intimidation and

2    implicit threats of use of additional physical force), *with Heinke v. Cnty. of Tehama Sheriff's*

3    *Dep't*, No. 12-2433, 2013 WL 3992407, at *7 (E.D. Cal. Aug. 1, 2013) (allegations that

4    defendant intimidated by withholding nutrition and medical care from isolated injured plaintiff to

5    keep him quiet about the mistreatment sufficient to demonstrate a threat, intimidation or coercion)

6    and *Bender*, 217 Cal. App. 4th at 981 (court found "a showing of coercion separate and apart

7    from the coercion inherent in an unlawful arrest" where officer also "deliberately and

8    unnecessarily beat and pepper-sprayed the unresisting, already handcuffed plaintiff.").

9           The Bane Act was "intended to address only egregious interference with

10   constitutional rights, not just any tort." *Shoyoye*, 203 Cal. App. 4th at 959.  In broadening the

11   Bane Act's application to any unconstitutional acts, the California Supreme Court did so  "so long

12   as those acts were accompanied by the requisite threats, intimidation, or coercion." *Venegas*, 32

13   Cal. 4th at 843.  Here, plaintiff merely repeats the same allegations that support his section 1983

14   claim for unreasonable search.  *See* TAC ¶¶ 119–23.  He has not pled a Bane Act claim.

15          Plaintiff has not stated a Bane Act claim for illegal and unreasonable search.

16                  2.      Placer County

17          As for Placer County, in California, a county can be held liable for the negligence

18   of an employee under California Government Code section 815.2.  *See Robinson v. Solano Cnty.*,

19   278 F.3d 1007, 1016 (9th Cir. 2002) (plaintiff made sufficient claims against individual police

20   officers and county under California law for false arrest, false imprisonment, assault and battery,

21   negligence and gross negligence).  Section 815.2 provides that "[a] public entity is liable for

22   injury proximately caused by an act or omission of an employee of the public entity within the

23   scope of his employment if the act or omission would, apart from this section, have given rise to a

24   cause of action against that employee or his personal representative."  Cal. Gov't Code §

25   815.2(a).  California law in this way is different from federal law: "California . . . has rejected the

26   *Monell*[7] rule and imposes liability on counties under the doctrine of respondeat superior for acts

27   _____

28          [7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

1    of county employees; it grants immunity to counties only where the public employee would also

2    be immune." *Robinson*, 278 F.3d at 1016.

3             Given plaintiff has not stated a cause of action against Addison, the county cannot

4    be held vicariously liable.

5             The motion to dismiss by defendants Addison and Placer County as to plaintiff's

6    claim for illegal and unreasonable search in violation of California Civil Code section 52.1 is

7    GRANTED with leave to amend.

8        D.      Ninth Claim: Threat to Obtain  Arrest Warrant in Violation of California Civil
                 Code Section 52.1 against Addison and Placer County
9

10            1.      Addison

11            The Bane Act also is the basis of plaintiff's ninth claim.  "The essence of a Bane

12   Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or

13   coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do

14   under the law or to force the plaintiff to do something that he or she was not required to do under

15   the law." *Fenters v. Yosemite Chevron,* 761 F. Supp. 2d 957, No. 05–1630, 2010 WL 5475945, at

16   *34 (E.D. Cal. Dec. 30, 2010) (quoting *Austin B. v. Escondido Union School Dist.,* 149 Cal. App.

17   4th 860, 883 (2007)); *accord Bailey v. County of San Joaquin,* 671 F. Supp. 2d 1167, 1179 (E.D.

18   Cal. 2009).  The statute expressly addresses when "speech alone" may provide a basis for a Bane

19   Act claim:

20           (j) Speech alone is not sufficient to support an action brought
             pursuant to subdivision (a) or (b)[8], except upon a showing that the
21           speech itself threatens violence against a specific person or group of
             persons; and the person or group of persons against whom the threat
22           is directed reasonably fears that, because of the speech, violence
             will be committed against them or their property and that the person
23           threatening violence had the apparent ability to carry out the threat.

24

25           [8] Subdivision (a) is set forth above.  *See* page 15 *supra*.  Subdivision (b) reads as follows:
     "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the
26   United States, or of rights secured by the Constitution or laws of this state, has been interfered
     with, or attempted to be interfered with, as described in subdivision (a), may institute and
27   prosecute in his or her own name . . . ."  Cal. Civ. Code 52.1(b).

28

1   Cal. Civ. Code 52.1(j); *see also Martin v. County of San Diego,* 650 F. Supp. 2d 1094, 1108 (S.D.

2   Cal. 2009) ("although the language of § 52.1(a) does not mention 'violence,' § 52.1(j) explicitly

3   provides that violence is a required element where the 'threat, intimidation or coercion' is based

4   purely upon a defendant's statements.").

5          In the recent case *Allen*, a California Court of Appeal found there was no section

6   52.1 violation where the complaint alleged only a threat of arrest and confiscation of property by

7   the police officer.  234 Cal. App. 4th at 66).  In *Allen*, the plaintiffs specifically did not allege the

8   use of excessive or unreasonable force by the police or a threat of violence.  *Id.*  The plaintiffs

9   alleged only they "had a reasonable belief violence would result should they disobey the orders of

10  the police officers . . . ."  *Id.*

11         Here, plaintiff alleges that "[d]efendant Addison . . . threaten[ed] to have an arrest

12  warrant issued from Placer County for [plaintiff]'s arrest should [plaintiff] refuse to meet with

13  [d]efendant Addison to [d]efendant Addison's satisfaction."  TAC ¶ 142.  As in *Allen*, plaintiff

14  has not alleged Addison used excessive force or threatened him with violence.  The complaint

15  thus lacks the factual allegations to support the elements required of a section 52.1 claim.

16                      2.      Placer County

17         Here as well, given that plaintiff has not stated a claim against Addison, the county

18  cannot be held vicariously liable for Addison's negligence under California Government Code

19  section 815.2.

20         The motions of defendants Addison and Placer County to dismiss plaintiff's claim

21  for threat to obtain arrest warrant in violation of California Civil Code section 52.1 are

22  GRANTED, with leave to amend.

23  IV.     CONCLUSION

24         For the foregoing reasons, the court GRANTS in part and DENIES in part

25  defendants' motions to dismiss as follows:

26         (1) The Sacramento County and Placer County defendants' motions to dismiss

27  plaintiff's claim for conspiracy are both GRANTED, with leave to amend.

28

17

1          (2) Defendant Hardcastle's motion to dismiss plaintiff's claim on the grounds of

2    qualified immunity is DENIED.

3          (3) The motions of defendants Addison and Placer County to dismiss plaintiff's

4    claim for illegal and unreasonable search in violation of California Civil Code section 52.1 are

5    GRANTED, with leave to amend.

6          (4) The motions of defendants Addison and Placer County to dismiss plaintiff's

7    claim for threat of arrest warrant in violation of California Civil Code section 52.1 are

8    GRANTED, with leave to amend.

9          Plaintiff's fourth amended complaint is due within 21 days from the date of this

10   order.

11         IT IS SO ORDERED.

12   DATED:  February 11, 2016.

13

14   _____
     UNITED STATES DISTRICT JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28

18